THE PEOPLE ex rel. ORRIN W. SAGE, Appellant, v. GEORGE
W. SCHUYLER, Auditor, etc., Respondent.

Where an appropriation, within the power of the Legislature, is made by
it, no inquiry is admissible as to the reasons, or information upon which
it acted.

Where a work of public necessity is done under an invalid contract, or
even voluntarily, without the authority of any public officer, and the
Legislature appropriates money to pay for it, a disbursing officer cannot
refuse to apply the money to the purpose for which it was appropriated,
on the ground that the State was not originally under any legal obliga-
tions to make payment, or that the Legislature was not sufficiently
informed of the facts; the only question for such officer is whether the
appropriation was for the purpose claimed; when this is ascertained
his duty is ministerial only.

The canal commissioners having entered into a contract with M. to do
certain work, which was of public necessity, and M. having refused to
go on with the work because of the refusal of the canal auditor to audit
and allow certificates of the commissioners, on the ground that there
was no unexpended appropriation to pay them, the relator, at the
request of the commissioners, for the purpose of expediting the work,
advanced the money required to complete it, in reliance upon a future ap-
propriation by the Legislature, and the certificates were assigned to him.
The acts of the commissioners in respect to the work were communicated
to the Legislature, from time to time, in the official reports of the commis-
sioners, which stated the amounts expended and the purposes of the
expenditure in accordance with the facts. In 1875 a budget was made
up in the auditor's office of out-standing certificates, issued for work done
on the canal, and furnished to the Legislature when engaged in making an
appropriation to pay the same; in which budget the certificates so held
by relator were specifically described and included, and an appropria-
tion was made to the precise amount of the budget (§ 1, chap. 263, Laws
of 1875). In proceedings to compel the auditor by mandamus to draw
his warrant for the amount of the certificates; held, that the facts author-
ized a finding, that the act making an appropriation was passed with
full knowledge on the part of the Legislature, and with the intent to
provide specifically for the payment of said certificates; that the fact
that the appropriation was made for this purpose having been estab-
lished, the question of ratification or knowledge of the Legislature
of the facts relating to the contract, and of the validity of the contract
were unimportant; and that the relator was entitled to the relief sought.

Also held, that said appropriation was not repealed by the repealing clause
in the act of 1876 (§ 1, chap. 425, Laws of 1876), providing "for the com-
pletion or cancellation of all pending contracts" for new work upon or
extraordinary repairs of the canals.

*People ex rel. Sage* v. *Schuyler* (17 Hun, 106), reversed.
*People ex rel. Wasson* v. *Schuyler* (69 N. Y., 242), distinguished.

(Argued October 8, 1879 ; decided December 9, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, reversing a judgment in favor of relator, entered upon the report of a referee, and awarding judgment absolute against relator. (Reported below, 17 Hun, 106.)

This was an application for a peremptory writ of mandamus, requiring defendant, as auditor of the canal department, to issue his warrant on the treasurer of the State for the amount of, and to pay certain certificates issued by the canal commissioners. An alternative writ was issued, to which return was made. The relator traversed the issues tendered thereon, and the matter was referred to a referee to hear and determine.

The facts as found by the referee are substantially as follows :

Prior to 1848, the State had constructed a canal reservoir and feeder in the town of Nelson, county of Madison, known as the Erieville reservoir, the waters of which passed down Erieville (Nelson) creek into Chittenango creek, the outlet of Cazenovia lake, at a point a few rods from the lake, and thence down the Chittenango creek to the "Rome level" of the Erie canal ; a few rods below the mouth of the Erieville creek, there was a dam across the Chittenango creek, owned by individuals, which furnished power to their mills on the banks of the creek. In 1848 the canal commissioners, temporarily appropriated the waters of Cazenovia lake, and its outlet, Chittenango creek, to furnish an additional supply of water to the "Rome level," and for such purposes erected another dam or bulk-head across Chittenango creek, above the mouth of Erieville creek, which was so arranged that when the water of the lake was low, the water of the Erieville reservoir and creek, stopped by the lower dam, could pass through the gate of the upper

dam back into the lake, and there be stored until needed for the canal. The canal commissioners at the same time caused gates to be constructed in the lower dam, so that they could control the supply of water at that point, and thereafter down to 1854, the State, by means of these dams and the gates therein, continued to control and use the reservoir, lake and creeks, and controlled and regulated the flow and passage of water over the lower dam for the purpose of feeding the canal. On September 13, 1854, the canal board, by resolution, authorized the permanent appropriation of the water of Cazenovia lake, and adopted maps, plans and estimates, converting the lake into a canal reservoir, to be used in connection with the Erieville reservoir and the two creeks as a feeder to the Erie canal, and the action of the board was reported to the Legislature of 1855 by the canal commissioners, in their annual report for the year 1854. June 5, 1855, the canal commissioners permanently appropriated the waters of the lake and creeks, passing over the lower dam, and instituted measures to carry out the plans adopted by the canal board. July 10, 1855, the canal board changed somewhat the original plan, and adopted what is known as the "citizens' plan," which retained the lower dam at its original height, instead of lowering it, upon condition that certain owners of the water-power should execute a release to the State for damages, which was done accordingly. The other property owners applied for and obtained their damages in consequence of such appropriation, and ever since that time the State has exercised control over the waters passing over the lower dam and other dams erected on the same site, making the use thereof by the mill owners subordinate to the requirements of the canal. In 1855, the canal commissioners, in pursuance of the plan finally adopted by the canal board, constructed a new dam on the site of the old lower dam, and while the same was in progress reported their action and that of the canal board in reference thereto, and the cost of its construction, to the Legislature of 1856, in their annual

report for the year 1855; and the new dam remained under
the control of the canal commissioners until it was carried
away by a flood in 1865. The canal officers declining to
build another dam, a new one was built by the mill owners
on the same site in which, however, a gate was constructed
by the canal commissioners, and by means thereof they con-
trolled the flow of water the same as before, until this dam
was also carried away by a flood in March, 1872.

"The mill owners having refused to erect another dam, the
canal commissioner, then in charge deeming it necessary for
the interest of the State, and for the proper use and control
of the waters of the Erieville reservoir and of the lake, and
intending to appropriate the land or site of the old dam, if
such appropriation had not already been made, to the use
and benefit of the State, for the purpose of erecting a new
dam, wherewith to control and regulate the supply of water
from the reservoir and lake, examined said site and directed
the engineer in charge to take possession thereof (which he
did) and announced to the property owners interested the
appropriation thereof, to which they consented ; and the
commissioner caused a map, plan and estimate for the con-
struction of a new dam on the old site, to be made, and
presented the same to the canal board." The canal board
shortly afterward, May 8, 1872, " duly adopted the said
plan and estimate," " and authorized the canal commission-
ers to advertise and enter into a contract for the construc-
tion of the dam, provided the property owners should make
a release satisfactory to the attorney-general." The parties
in interest " executed and delivered to the canal commission-
ers a valid release in writing of all claims against the State
for damages on account of such appropriation and use of the
mill site and water power," which was accepted and placed
on file in the office of the auditor of the canal department.
The commissioners advertised in the State and local papers
the letting of the work for the 21st day of May, 1872, and
received various bids for the work, and, among others, one
from Henry J. Mowry. The next day, May 22, 1872, the

canal board reconsidered the resolution of May eight, and laid the same on the table. December 18, 1872, the board of canal commissioners assuming to act under chapter 343 of the Laws of 1872 adopted the same plan, directed the reconstruction of the lower dam on the old site, accepted the bid for said work put in by Mowry, and awarded the contract to him; and on the same day made and executed a contract with him for the construction of the dam. The canal board, on the 14th day of February, 1873, appointed a committee to "examine the matter of rebuilding the dam," and report thereon; such report was made on the 19th of March, 1873, containing a full history of all the previous proceedings of the State officers, the board of canal commissioners and the canal board; said board accepted the report, adopted the recommendation of the committee, and approved the action of the commissioners. The canal commissioner in charge on March 3, 1873, in pursuance of the contract, upon the estimate of the resident engineer, duly issued his official certificate to the contractor, directed to the auditor, certifying there was due to the contractor the sum of $714 upon the contract; and April 7, 1873, in like manner, duly issued to the contractor, another certificate, certifying there was then due to him the further sum of $1,292; the auditor refused to audit and allow these certificates, "on the ground that there were no moneys in the treasury applicable to their payment;" and the contractor was then informed that "there were no funds to pay him for the construction of the dam under his contract." He declined to go on with the work, until provision was made for payment as it progressed in accordance with the terms of his contract; and the work was accordingly suspended. The canal commissioner in charge, in October, 1873, applied to the relator and requested him to make provision for advancing the money to the contractor, upon his official certificates under the contract, until provision could be made for the payment thereof at the next session of the Legislature, stating to the relator that the

194        PEOPLE ex rel. SAGE *v.* SCHUYLER.        [Dec.,.

Statement of case.

work was necessary for the interest of the State. In com-
pliance with such request, the relator and one Reuben Par-
sons, obligated themselves to advance and pay to Mowry the
money as earned under his contract with the commissioners,
upon the assignment by the contractor to them of the cer-
tificates of indebtedness issued by the commissioners under
the contract. At the request of the canal commissioner in
charge, the contractor then proceeded with and completed
the work in pursuance of the contract; and he received the
amount he was entitled to, which was advanced and paid from
time to time as the work progressed, by the Bank of Caze-
novia, on the promissory notes of the relator and Parsons,
which were subsequently paid to the bank by the relator.
About the 25th of July, 1874, and within ninety days after
the completion of the work, the resident engineer, in pur-
suance of the terms thereof, made and presented a final
account to the division engineer, who duly approved and
delivered the same to the canal commissioner, and the latter
thereupon issued and delivered to the contractor a third cer-
tificate for $7,734.61, the balance due upon the contract, in
addition to the amounts of the former certificates. The
three certificates were duly assigned and transferred to the
relator. "The continuance of the work in the fall of 1873,
and the completion of the lower dam was a public benefit
and necessary to enable the State to use and control the
waters of the Erieville reservoir and Cazenovia lake for the
purpose of supplying water to the Erie canal. The work
was done in good faith at reasonable prices, and is of great
use and benefit to the State; and the State by means thereof
has ever since had exclusive control of the waters passing
over the dam. The relator had no personal interest in the
work or the dam, otherwise than under his collateral con-
tract made at the request of the canal commissioner, and he
procured the money to be advanced and paid to the con-
tractor, simply to forward a public work, at the request of a
public officer, and upon his representation that it was a pub-
lic benefit and would be promptly repaid by an appropria-

tion for that purpose, at the next session of the Legislature."
" The canal commissioner in charge, in his annual report for
the year 1872, to the Legislature of 1873, stated the facts as
to the carrying away of the old dam, the necessity to the
State of the maintenance of the dam, and the action of the
canal board and the commissioners in regard thereto, and in
reference to contracting for its rebuilding." And after the
completion of the work, the commissioners, in their annual
report for the year 1874, to the Legislature of 1875, reported
the aggregate amount of the three certificates of indebted-
ness, as an item of public expenditure as follows : " For
rebuilding dam at Cazenovia, $9,740.61." " The auditor, in
1875, caused a budget to be made of the items for which
appropriations were required to be made to pay claims then
outstanding in the canal department, and among others for
certificates of indebtedness issued for work done on the Erie
canal, which amounted, in all, to $107,004.03 ; there was
included therein and specifically stated each of the three cer-
tificates in question, and the amounts thereof respectively
formed a part of said sum. ¯ The auditor also caused to be
computed the interest due on the certificates of indebted-
ness, including the three in question, which amounted to
$12,973.08, and caused an act to be drawn and presented to
the Legislature, containing said two items of appropriation,
which was adopted and passed accordingly by the Legisla-
ture. (Chap. 263, Laws of 1875.) In reference to the cer-
tificates in question, the referee found that " the act was
passed with full knowledge on the part of the Legislature
of the facts in reference to the building of the dam, and
with intent to ratify the same, and to provide moneys for
the payment of the certificates." The money thus appro-
priated was collected and paid into the treasury, and
thereafter, and before the commencement of this action,
the certificates were duly presented to the auditor and
demand made that he issue his warrant therefor, which he
refused.

Further facts appear in the opinion.

*E. Countryman*, for appellant. Chapter 263 of the Laws of 1875 was a ratification, on the part of the Legislature, of the acts of the State officers in rebuilding the dam in question, a recognition of its indebtedness thereby incurred, and an appropriation of means for the payment thereof. (*Merritt* v. *Millard*, 3 Abb. Ct. of App. Dec., 291; *People ex rel. Martin* v. *Brown*, 55 N. Y., 180; *Ross* v. *Curtis*, 31 id., 606; *Murdock* v. *Aiken*, 29 Barb., 59; 55 N. Y., 187; *Thayer* v. *City of Boston*, 19 Pick., 511; *First Nat. Bk. of Oxford* v. *Wheeler*, 72 N. Y., 201.) The Legislature has power to ratify the contract of a municipal corporation which was originally void as *ultra vires*, and thus to render it valid and effectual. (*Nelson* v. *Mayor of N. Y.*, 63 N. Y., 536; *Brown* v. *Mayor of N. Y.*, id., 239; *People ex rel. Baker* v. *Haws*, 36 Barb., 59; *Hasbrouck* v. *Milwaukie*, 21 Wis., 217; *Campbell* v. *City of Kenosha*, 5 Wall., 194; *Winn* v. *Macon*, 21 Ga., 275; *New Orleans* v. *Clark*, 5 Otto, 644; *Mattingly* v. *Dist. Columbia*, 7 id., 687; *People* v. *Stephens*, 71 N. Y., 527.) The legislative recognition may be by implication. No express words of ratification are necessary. The intention may be ascertained from the language of the statute applied to the subject matter, in view of public and notorious facts at the time, and of all the surrounding circumstances. (*Brown* v. *Mayor of N. Y.*, 63 N. Y., 239; *Nelson* v. *Mayor of N. Y.*, id., 536; *People* v. *Flanigan*, 66 id., 238; *People* v. *Stephens*, 71 id., 527, 537; *Campbell* v. *City of Kenosha*, 5 Wall., 194; *Mattingly* v. *Dist. Columbia*, 7 Otto, 687.) It will be presumed that the Legislature was cognizant of all such facts and circumstances. (*Brown* v. *Mayor of N. Y.*, 63 N. Y., 239; *Nelson* v. *Mayor of N. Y.*, id., 536; *People* v. *Flanigan*, 66 id., 242; *People* v. *Super. Livingston*, 68 id., 115; *Moore* v. *Mayor of N. Y.*, 73 id., 238.) The act of an agent may always be presumed to have been ratified by his principal when the acts and conduct of the latter are inconsistent with any other supposition, as where he receives and holds the fruits of the agent's acts, and a considerable period of time has elapsed without any

1879.] PEOPLE ex rel. SAGE *v.* SCHUYLER. 197

Statement of case.

dissent. (*Maddock* v. *Bevon*, 39 Md., 485; *Elwell* v. *Chamberlain*, 31 N. Y., 611; *Farmers' Loan Co.* v. *Walworth*, 1 id., 433; *Sage* v. *Sherman*, 2 id., 418; *New Hope Bridge Co.* v. *Phœnix Bank*, 3 id., 156; *Hoyt* v. *Thompson's Ex.*, 19 id., 208; *Bridenbecker* v. *Lowell*, 19 Barb., 10.) The work having been completed and accepted, the act of the Legislature in making provision for its payment is conclusive and cannot be reviewed in the courts. (*People* v. *Hows*, 21 How., 179; *Guilford* v. *Super. of Chenango*, 13 N. Y., 143; *People* v. *Mayor of Brooklyn*, 4 id., 419; *New Orleans* v. *Clark*, 5 Otto, 644; *People* v. *Williams*, 55 N. Y., 367; *People* v. *Super. Kings*, 52 id., 556.) The act of 1875 was not repealed by chapter 425 of the Laws of 1876. (*Van Rensselaer* v. *Snyder*, 9 Barb., 302; *Bowen* v. *Lease*, 5 Hill, 221; *People* v. *Palmer*, 52 N. Y., 84; *Smith* v. *People*, 47 id., 331; *In re Barber*, 86 Penn., 392.) If the act of 1876 repealed the act of 1875, it could not affect the rights of the relator, which had vested under the law. (*Palmer* v. *Conley*, 4 Den., 374; 2 N. Y., 182; *Vanderkar* v. *R. and S. R. R. Co.*, 13 Barb., 393; *People* v. *Trinity Church*, 22 N. Y., 44; *People* v. *Super. Westchester*, 4 Barb., 64; *Benson* v. *Moyer*, 10 id., 223; *Lewis* v. *Eastford*, 44 Conn., 477; *Arlington* v. *Pierce*, 122 Mass., 270; *Hall* v. *Holden*, 116 id., 172; *Greenland* v. *Weeks*, 49 N. H., 472; *People* v. *Stephens*, 71 N. Y., 527.) The contract was valid without a ratification by the Legislature. (*Green* v. *Mayor of N. Y.*, 60 N. Y., 303; *People ex rel. Seymour* v. *Canal Bk.*, 7 Lans., 220; *Hall* v. *Holden*, 116 Mass., 172; *Arlington* v. *Pierce*, 122 id., 270; *Hunneman* v. *Grafton*, 10 Metc., 454; *Sheldon* v. *Wright*, 7 Barb., 39; *Bloom* v. *Burdick*, 1 Hill, 130; *Ford* v. *Walsworth*, 19 Wend., 334; *Hartwell* v. *Root*, 19 J. R., 345; *Leland* v. *Cameron*, 31 N. Y., 115; *Jackson* v. *Sternberg*, 11 J. R., 513; *Peterson* v. *Mayor of N. Y.*, 17 N. Y., 449; *Niles* v. *Patch*, 13 Gray, 254; *Baker* v. *Johnson*, 2 Hill, 342; *Ten Broeck* v. *Sherrill*, 71 N. Y., 277; *Turrell* v. *Norman*, 19 Barb., 223.) Plaintiff is entitled to recover the fair value of the material furnished upon an

implied promise for the payment thereof, and in the absence of other evidence, the amount stipulated in the contract may be assumed to be the true value. (*Clark* v. *U. S.*, 5 Otto, 539; *New Orleans* v. *Clark*, 5 id., 644; *Solomon* v. *U. S.*, 19 Wall., 17; *U. S.* v. *Gill*, 20 id., 517; *Nelson* v. *Mayor of N. Y.*, 63 N. Y., 544; *Moore* v. *Mayor of N. Y.*, 73 id., 238.)

*E. W. Paige*, for respondent. The contract of December 18, 1872, was one for an extraordinary repair, or for new work, and was illegal and void. (1 R. S., p. 647, §§ 19, 20, [6th ed.]; 1 R. S., p. 650, § 39; Laws of 1870, chap. 767, vol. 2, p. 1905.) The statutes relating to the letting of contracts for new work and extraordinary repairs upon the canals not having been complied with, the contract was void. (*Dickinson* v. *Poughkeepsie*, MS. Ct. of App. ; *McDonald* v. *City of New York*, 68 N. Y., 23 ; *Brady* v. *Mayor of N. Y.*, 2 Bosw., 173; 20 N. Y., 312; *Halstead* v. *Mayor, etc.*, 3 Comst., 430 ; *Hogan* v. *City of Brooklyn*, 52 N. Y., 282; *Fox* v. *City of New Orleans*, 12 La. Ann., 154 ; *Johnson* v. *Common Council*, 16 Ind., 227 ; *Butler* v. *Charleston*, 7 Gray, 12 ; *Swift* v. *Williamsburgh*, 24 Barb., 427.) Canal commissioners are public agents, and public agents whose duties and powers are prescribed by statutes, and are conclusively presumed to be known by all; and where a public agent exceeds his authority, the principal is not bound by the contract made. (*Dellafield* v. *State of Illinois*, 26 W. R., 192 ; *State* v. *Hastings*, 10 Wis., 525 ; *Baltimore* v. *Reynolds*, 20 Md., 1 ; *Hull* v. *Marshall*, 12 Iowa, 142 ; *Whiteside* v. *United States*, 3 Otto, 247 ; Story on Agency, § 307 ; *Pierce* v. *United States*, 1 Ct. of Claims Rep., 270 ; *Brady* v. *Mayor*, 20 N. Y., 312 ; *McSpedon* v. *Mayor*, 7 Bosw., 601 ; *Peterson v. Mayor*, 17 N. Y., 349 ; Smith on Stat., §§ 676, 677 ; *Brown* v. *Mayor*, 63 N. Y., 239.) Chapter 263 of the Laws of 1875 (if not repealed), was not a ratification of the illegal contract of December 18, 1872, and creates no liability on the part of the State to pay

the certificates given under that contract. (*Owen* v. *Hull*, 9 Peters, 627 ; *Baldwin* v. *Burroughs*, 47 N. Y., 199 ; *Nixon* v. *Palmer*, 8 id., 399 ; *Seymour* v. *Wyckoff*, 10 id., 214 ; *Peo. ex rel. Wasson* v. *Schuyler*, 69 id., 242 ; *People* v. *Fields*, 58 id., 491 ; *Bd. Sup.* v. *Ellis*, 59 id., 620 ; *Lancey* v. *Bryant*, 30 Me., 466 ; *People* v. *Batchellor*, 22 N. Y., 128.) A ratification made upon erroneous information and in ignorance of the truth is not binding. (*Murray* v. *Binnenger*, 36 N. Y., 61 ; *Bk. of Beloit* v. *Beale*, 34 id., 473 ; *Keeler* v. *Salisbury*, 33 id., 653 ; *Palmer* v. *Huxford*, 4 Den., 166 ; *Morrell* v. *Dixfield*, 30 Me., 157 ; 2 Hill, 161 ; *Peo. ex rel. Schuyler* v. *Wasson*, 69 N. Y., 242.) Chapter 263, Laws 1875, was repealed by chapter 425, Laws 1876. (*Hadden* v. *The Collector*, 5 Wall., 107 ; *Flynn* v. *Abbott*, 16 Cal., 358 ; *State* v. *Cazeon*, 8 La. Ann., 114.) As the law was not in force when the contract was made, and neither the relator nor his assignor did anything in reliance upon its existence, it was competent for the Legislature to repeal the law. (*Peo. ex rel.* v. *Sup. Montgomery Co.*, 67 N. Y., 109.)

RAPALLO, J. The only ground upon which the majority of the General Term appear to have rested their decision is, that it did not appear that the Legislature at the time of the passage of the act of 1875, (Laws of 1875, chap. 263,) had sufficient knowledge of the facts, to render that act effectual as a ratification of the acts of the canal commissioners in building the dam in question, and issuing the certificates of indebtedness held by the relator.

The referee found as facts, that the statute in question was passed with full knowledge on the part of the Legislature, of the facts in reference to the building of the dam, and with intent to ratify the same, and to provide means for the payment of said certificates, and that the money to pay said appropriation was collected and paid into the treasury, and, that there remained in the treasury unexpended a sum sufficient to pay the certificates held by the relator, and the

legal interest thereon.  These findings unless wholly unsupported by evidence must be regarded as establishing the facts of the case.  They show a clear right in the relator to payment, and, that it was not the duty of the financial officers of the State to go behind the legislative direction and seek for technical objections to the validity of the contract under which the work was done, no fraud or imposition of any kind being shown or even alleged.  The evidence upon which these findings are based is very voluminous, but it establishes in substance that the money for which the certificates in question were issued, was advanced by the relator at the request of the canal commissioners, for the purpose of expediting a work of public necessity, for which there was not on hand any unexpended appropriation, and that the advance was made in reliance upon the future appropriation by the Legislature of money to reimburse the relator.  That the acts of the canal commissioners in respect to the particular work in question were communicated to the Legislature from time to time, by the official reports of the commissioners, which stated the amount expended, and the purposes of the expenditure, in accordance with the facts.  No suppression or misinformation is charged, except that in the respondent's points it is alleged that the reports failed to state that the contract had been executed without the direction of the canal board, and misstated that the plans and estimates had been adopted by the canal board and also omitted to state that the dam was constructed on plans different from those adopted by the canal board.  It appears however from the findings, that in March, 1873, the canal board, after a full investigation of the matter and of the action of the commissioners in awarding the contract in question, and with the contract before them substantially approved such action of the commissioners.

It also appeared that the amount appropriated by the Legislature of 1875 for the payment of outstanding certificates of indebtedness issued for work done on the canal, corresponded precisely with the amount of a budget made up in

the auditor's department and furnished to the Legislature when engaged in making the appropriation, in which budget the three certificates held by the relator were specifically described and included. We do not think that the referee went too far in regarding this circumstance as evidence of an intention on the part of the Legislature to provide specifically for the payment of these certificates. The identity of amount, together with the proof that the budget was furnished from the proper office as a basis for the action of the Legislature, afford evidence that the appropriation was founded upon that budget and was intended to cover it, and it cannot be said that the finding of the referee is unsupported, that the appropriation was made for the payment of the certificates held by the relator and included in the budget. This fact being established the discussion of the questions of ratification, and of the knowledge of the Legislature of the facts relating to the contract, and of the validity of the contract becomes unimportant. The appropriation was an act within the power of the Legislature, and no inquiry is admissible as to the reasons or information upon which it acted. Acts of the Legislature cannot be invalidated or disregarded on any such grounds. If the relator had done the work voluntarily, without the authority of any public officer, yet if the Legislature saw fit to pay for it, or to appropriate money for such payment, no disbursing officer of the government could refuse to apply the money to the purpose for which it was appropriated, on the ground that the State was not originally under any legal obligation to make the payment, or that the Legislature was not sufficiently informed of the facts. The only question for such officer to consider would be whether the appropriation was made for the purpose claimed. When that is ascertained his duty is merely ministerial and he has no power to supervise the action of the Legislature, or inquire into the extent or accuracy of the information upon which such action was founded.

For the reasons stated by the referee we do not think that the act of 1876 (chap. 425) had the effect of repealing the

appropriation, of which the relator claims the benefit. The case is clearly distinguishable from that of *People ex rel. Wasson* v. *Schuyler* (69 N. Y., 242).

The judgment of the General Term should be reversed, and the judgment on the report of the referee affirmed, with costs.

All concur, except EARL, J., not voting.

Judgment accordingly.