(92 Misc. Rep. 1)

## In re CHRISTEY.

(Supreme Court, Special Term, Erie County. October 7, 1915.)

1. MUNICIPAL CORPORATIONS ⬳870—MUNICIPAL EXPENSES—STATUTORY PROVISIONS.

   Under the Home Rule Act of 1913 (Laws 1913, c. 247), empowering cities to pay and compromise claims equitably payable by the city, though not constituting obligations legally binding on it, a city may properly pay counsel fees and disbursements incurred by a city auditor in an unsuccessful mandamus proceeding brought in good faith to compel his continuance in office, and to test the right of removal therefrom as a Spanish-American War veteran, without violating Const. art. 8, § 10, providing that no city shall give any money or property in aid of any individual, nor incur any indebtedness except for city purposes.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1817; Dec. Dig. ⬳870.]

2. MUNICIPAL CORPORATIONS ⬳351—MUNICIPAL EXPENSES—AUTHORIZATION.

   If a common council had authority to authorize a city auditor to employ counsel to establish his right to the office, a subsequent ratification of such employment by directing counsel fees to be paid is equivalent to an original authorization.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 881; Dec. Dig. ⬳351.]

3. MUNICIPAL CORPORATIONS ⬳958—POWERS—TAXATION.

   Payment by a city council to a city auditor of counsel fees and disbursements incurred by him in an unsuccessful mandamus proceeding to compel his continuance in office, under the Home Rule Act of 1913, authorizing a city to pay and compromise claims equitably payable, though not constituting legal obligations, was not void as an abuse of the taxing power, since a specific statute existed authorizing payment, and a public question was involved.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2023–2037; Dec. Dig. ⬳958.]

4. MUNICIPAL CORPORATIONS ⬳63—POWER OF COURTS—QUESTIONS OF PUBLIC IMPORTANCE.

   Since courts will not interfere with the action of legislative bodies of municipalities, except for clear abuse of power, a decision by a city council directing the payment of counsel fees and expenditures incurred by a city auditor in a mandamus proceeding to compel his continuance in office, being a determination within the power of the council that the litigation involved a question of public importance, will not be disturbed.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 155, 1378, 1879; Dec. Dig. ⬳63.]

Proceeding for mandamus by Arthur B. Christey against John F. Cochrane, as Comptroller of the City of Buffalo. Writ granted.

Louis E. Desbecker, of Buffalo, for plaintiff.
William S. Rann, Corp. Counsel, of Buffalo, for defendant.

WOODWARD, J. This is a proceeding for a writ of mandamus brought by the applicant, Capt. Arthur B. Christey, to compel the defendant, as comptroller of Buffalo, to countersign and deliver to him a warrant directed drawn in favor of the applicant by the common council of the city, with the approval of the mayor, which the comptroller refuses to countersign or deliver. The voucher in question

represents the amount of counsel fees and disbursements incurred by Capt. Christey in a mandamus proceeding instituted by him some time ago to compel his continuance in the office of auditor of the city, to which he had been appointed, and to test the rights of his removal therefrom in the face of his being a veteran of the Spanish-American War.

The comptroller claims that the city has no legal right to pay this claim, by reason of article 8, § 10, of the state Constitution, providing that no city shall give any money or property in aid of any individual, nor incur any indebtedness except for city purposes. The applicant, however, claims that the services which were rendered by his counsel in the original mandamus proceeding, under the circumstances of the case, are fairly to be regarded as having been performed in the public interest and for the benefit of the city and its citizens, and that the common council may therefore reimburse him for the same. The conflicting contentions present the question to be determined in this proceeding.

The facts, which are undisputed, are briefly as follows:

On December 29, 1913, Capt. Christey was appointed auditor of the city of Buffalo by the comptroller, to fill the vacancy caused by the death of the prior incumbent of the office. This appointment was confirmed by the common council on December 31, 1913, and relator at once entered upon the discharge of the duties of the position. Relator is an honorably discharged soldier, having served in the United States army during the Spanish-American War, and as such claimed, and was advised, that he was entitled to hold the office during good behavior, under the provision of the Civil Service Law (Consol. Laws, c. 7) relating to veterans.

In January, 1914, a controversy arose between him and Joseph N. Gleason as to who was entitled to the office of auditor; Mr. Gleason claiming the right to the place under a subsequent appointment by the newly elected comptroller. Relator thereupon notified the corporation counsel of the city, in a written communication to him, of the above situation, and requested and demanded of him that he institute such legal proceedings as should be necessary for relator's protection, and to secure a determination of the courts as to who was lawfully entitled to the office. The corporation counsel in a written communication declined to act for the relator, and appeared on behalf of the new comptroller and Gleason.

The questions to be determined were important public ones in various aspects, viz., whether the position of auditor of the city of Buffalo was that of the head of a department or merely a subordinate position, and also the scope and application of the Veteran Protection Laws under the Constitution and civil service statutes of the state. Relator thereupon employed Simon Fleischmann, an attorney of Buffalo, to represent him, and instituted proceedings to test the question as to whether the position of city auditor was that of the head of a department or a subordinate position, since, if it were a subordinate position, relator was clearly entitled to retain the office during good

behavior, and if it were the head of a department, Gleason was entitled to the position.

The Supreme Court at Special Term held that it was a subordinate position, and that relator was entitled to it and could not be removed, except upon charges and a hearing, and directed· that a peremptory mandamus issue. No charges were ever made against relator. On appeal taken by the comptroller and Gleason to the Appellate Division of the Supreme Court, the order of the Special Term was unanimously affirmed by the five judges hearing the appeal. A further appeal was taken to the Court of Appeals, which reversed the Appellate Division and the decision of the Special Term; six of the seven judges voting for reversal and one not voting.

Relator received a bill from his counsel for legal services and disbursements, and both branches of the common council, by resolution, with the approval of the mayor, directed a warrant drawn for the same in his favor. The city clerk drew the warrant, but the comptroller refused to deliver the warrant to relator. This proceeding is brought to compel him to surrender it. In this connection it may be stated that, although the corporation counsel of the city appeared for Mr. Gleason throughout all the court proceedings, Mr. Gleason also employed Mr. Daniel J. Kenefick, of Buffalo, as counsel to represent him on the appeals in the upper courts, and presented a claim to the common council for reimbursement for the services and expenses of Mr. Kenefick, which was directed paid at the same time that Capt. Christey's claim was ordered paid. The comptroller also refused to deliver the warrant drawn for the benefit of Mr. Gleason, whereupon Mr. Gleason instituted mandamus proceedings to compel the delivery thereof.

When Mr. Gleason's application came before the court, which was at the same time that Capt. Christey's motion was made, it was practically conceded that the city could properly pay Mr. Gleason's claim, upon the theory that there was a distinction between the two, in that Mr. Gleason had ultimately been successful in the litigation. The merits of this attempted distinction are considered below. It should be borne in mind that relator was the de jure auditor as well as the de facto one during two weeks. After the succeeding comptroller appointed Gleason, he took possession of the office. Relator, however, was successful at Special Term and in the Appellate Division, and therefore continued to be the de jure official, so far as the decisions of the courts could make him so, until the final adverse determination of the Court of Appeals.

[1] The Home Rule Act of 1913 (chapter 247 of the Laws of 1913, section 20, subdivision 5), which empowers every city in the state "to pay or compromise claims equitably payable by the city, though not constituting obligations legally binding on it," has an important bearing upon the present controversy. Under this section it appears that in 1913, by state statute, cities were warranted in paying claims such as the one in question. Prior to the enactment of this statute, there had been a somewhat similar one passed, but it related only to the payment of moneys incurred by officials in defending their title to office

or in defending themselves for some official act done by them. Chapter 700 of the Laws of 1899.

A section similar in part to this is now found in the Greater New York Charter (Laws of 1897, chapter 378), which permits of the payment of moneys to officials for purposes similar to those laid down in chapter 700 of the Laws of 1899 heretofore referred to. But it will be noticed that the so-called Home Rule Act of 1913 is far broader and permits of the payment of any claim equitably payable by the city, although not constituting a legal obligation, and this clearly changes the aspect of the law in relation to municipalities, though it does not affect the law in relation to county officials as laid down in chapter 700 of the Laws of 1899. That this is so is shown by the case of Mollnow v. Mayor of North Tonawanda, 89 Misc. Rep. 495, 152 N. Y. Supp. 110.

We have in the Mollnow Case, for the first time, a direct interpretation of the Home Rule Act. In making an arrest, a police official used more force than was necessary. He was sued for assault by the person arrested, and a judgment obtained against him. The city authorities directed that he be repaid the moneys expended by him in the necessary defense of the action for assault. Justice Pound held that, because of the Home Rule Act, he would not restrain the city treasurer from delivering the warrant. So that we have here flatly the question determined under the Home Rule Act. In other words, Justice Pound determined that it was not unconstitutional for the city to pay the expenses incurred by the official in defending himself, although he had illegally arrested a person and a judgment had been obtained against him because of his illegal arrest.

The section of the New York Charter heretofore referred to has also been upheld by several Appellate Division opinions. The court in Kane v. McClellan, 110 App. Div. 44, 96 N. Y. Supp. 806, distinctly held that the reimbursing of officials for such expenses was constitutional and that the statute did not contravene section 10, article 8, of the state Constitution. See, also, Matter of Deuel v. Gaynor, 141 App. Div. 630, 126 N. Y. Supp. 112.

A recent case arising in Buffalo, and closely analogous to the present one, was the application of Edward D. Peters for a mandamus against William G. Justice, as comptroller of Buffalo in 1912. 75 Misc. Rep. 504, 133 N. Y. Supp. 847. In that case, he was reimbursed, for the fees he incurred in employing counsel, by the city of Buffalo, and the court directed the comptroller to deliver a warrant to him as ordered in the Peters Case by the common council. The only statute in existence at that time was chapter 700 of the Laws of 1899. However, he did not proceed under that law; but the court, notwithstanding, directed the payment of the moneys. This case was determined in 1912, whereas the Home Rule Act did not come in force until 1913.

In the Peters Case the court recognized that, even before the Home Rule Act was passed in 1913, it had been held in many cases that the Legislature could authorize a municipal corporation to recognize and pay claims not binding in strict law, which, for technical reasons, could not be enforced in equity, where such claims were just and

equitable in their character and involved a moral obligation. Matter of Peters v. Justice, 75 Misc. Rep. 504, and numerous cases cited at page 512, 133 N. Y. Supp. 847.

[2] While the common council did not originally authorize the employment of counsel by either Mr. Peters or by Capt. Christey, it is well settled that, if the common council had the authority to authorize Capt. Christey to employ counsel at the outset, its subsequent ratification of such employment by directing the present claim to be paid, and a warrant drawn in payment therefor, was equivalent to an original authorization. Matter of Peters v. Justice, 75 Misc. Rep. 504, 509, 133 N. Y. Supp. 847; People ex rel. Griffiths v. Board of Supervisors, 143 App. Div. 722, 128 N. Y. Supp. 638; Abells v. City of Syracuse, 7 App. Div. 501, 40 N. Y. Supp. 233; Peterson v. City of New York, 17 N. Y. 449; Dillon on Mun. Corp. (4th Ed.) § 463.

As bearing upon the equities of the applicant's claim, it is to be noted that he had been in office some weeks before his removal was attempted, and as soon as he was notified that he was to surrender the office he promptly applied to the corporation counsel to take such proceedings as were necessary for the protection of what he was advised, and, in good faith believed, to be his legal rights. It is not unreasonable to hold that, as against a new appointee, he at the time had priority of right to the services of the corporation counsel under section 163 of the City Charter, which provides that the corporation counsel shall prosecute and defend all proceedings by or against the city or any of its departments, and shall, when requested, advise all officers and departments as to their powers and duties, and shall also discharge such other duties as may properly pertain to the legal department of the city. The corporation counsel refused to represent the applicant, whereupon he employed other counsel, which was all he could well do under the circumstances. All of the communications between the applicant and the corporation counsel were in writing, and appear in the moving papers, and are undisputed.

The claim of the applicant, under the circumstances of this case, is not of such a nature as to fall within the prohibition of the provision of the state Constitution prohibiting a city from giving money in aid of an individual, and it was fairly within the authority and discretion of the common council and the mayor of the city to pay the same without violating the constitutional inhibition. The claim was of such a public nature, and of such public interest and concern, as to warrant and justify the common council in regarding it as a just and equitable claim, which the city could pay. The recognition and payment of this claim is warranted, first, as is shown in the Peters Case, without a direct statute; and, secondly, because it is now expressly authorized by the Home Rule Act.

The decisions of the courts invoked by the corporation counsel against the payment of this claim, which relate to the constitutionality of the payment of such claims, are not applicable. In Rattigan v. Board of Supervisors of Cayuga County, 152 N. Y. Supp. 402, the court held that, under the statute under which the person attempted to be repaid the expenses he had incurred in defending himself, he could

not recover, because the statute was not broad enough. The statute in question was subdivision 18, section 240 of the County Law (Consol. Laws, c. 11), which permitted the recovery of—

"all damages recovered against, or costs and expenses lawfully incurred by, a county officer in prosecuting or defending an action or proceeding brought by or against the county or such officer *for an official act done.*"

The court held that the act in question was not an official act, and that therefore he could not recover. It will be noticed here that there was a specific statute limiting the recovery by an official to specific things. The court held that the action for which he attempted to be reimbursed did not come within the purview of the statute. Later the court in this opinion did state that in any event he believed it would violate the provisions of the state Constitution (article 8, section 10), and then cites various cases, such as Matter of Straus, 44 App. Div. 425, 61 N. Y. Supp. 37, Matter of Chapman and Stemmler v. Mayor, below considered, and Bush v. Supervisors, 159 N. Y. 212, 53 N. E. 1121, 45 L. R. A. 556, 70 Am. St. Rep. 538.

Each of these cases, upon an examination, will be found to have been an attempt to pass a statute for the payment of moneys to officials, which was retroactive in its nature, and this, beyond question, is in contravention of section 10, article 8, of the state Constitution. It has always been held so squarely in the Chapman Case and the other cases cited, as well as in every other case in which it has been considered by the courts of this state. So that, although the judge in the Rattigan Case did not decide it on this issue, he came to his conclusion as to the constitutional phase because of the cases which related to *retroactive statutes* which have always been held to be unconstitutional. He apparently did not have the Appellate Division opinions, such as Kane v. McClellan, called to his attention, nor had the case of Mollnow, above cited, been at that time determined. It must be borne in mind that in the Rattigan Case we have a statute totally dissimilar to the Home Rule Act, and that the Home Rule Act has no application to county divisions, but only to municipal corporations.

All the cases urged by the corporation counsel against the constitutionality of the payment of a claim such as the one in question will be found to come under one of two or three heads, viz.: They all arose in an attempt to obtain repayment of moneys expended or liabilities incurred under a statute not in existence at the time of the payment of the moneys or the incurring of the liabilities; that is to say, attempting to obtain payment through a statute which was retroactive. Such claims, under the laws of this state, cannot be paid, as they are clearly unconstitutional, and have been held so uniformly. Or they have attempted to obtain payment under some statute, such as the one referred to in the Rattigan Case, not broad enough to cover the facts in a given case, as said statutes were specific as to what claims could be paid, and they did not come thereunder. Therefore they have no application to the case in question, as a brief analysis of these decisions will disclose.

In Matter of Jensen, 28 Misc. Rep. 378, 59 N. Y. Supp. 653, it will be found that the payment was denied because this statute was re-

troactive. In West v. Utica, 71 Hun. 540, 24 N. Y. Supp. 1075, the court did not go into the constitutional question at all, but merely held that the aldermen had not acted in good faith, and claimant therefore could not recover. In Stemmler v. Mayor, 179 N. Y. 473, 72 N. E. 581, there was a retroactive statute, and the question involved was whether a de jure official could be paid after the de facto official had received the salary. The statute in question was passed 20 years after the controversy took place. Matter of Fallon, 28 Misc. Rep. 748, 59 N. Y. Supp. 849, was an early decision, and attempted to hold chapter 700 of the Laws of 1899 unconstitutional; but this, of course, has been since decided otherwise repeatedly. Matter of Labrake, 29 Misc. Rep. 87, at page 89, 60 N. Y. Supp. 571, distinctly said it does no go into the constitutionality of the question, but declines to reimburse the officer, as it says the statute does not apply to an officer indicted for killing a person. Donahue v. Keeshan, 91 App. Div. 602, 87 N. Y. Supp. 144, is not in point, as it simply held that the corporation counsel was not required to and could not defend a policeman who committed an assault. In Matter of Chapman, 168 N. Y. 80, 61 N. E. 108, 56 N. R. A. 846, 85 Am. St. Rep. 661, some years after a police officer had defended charges preferred against him for official misconduct, he had a special statute passed permitting the state of New York to reimburse him in the sum of $11,500. The court held that the statute was retroactive and unconstitutional, and properly so. In Board of Supervisors v. Ellis, 59 N. Y. 620, determined in 1875, the court held that the officer in question could not be reimbursed, since the supervisors could only audit an account legally chargeable to the county, and that, in the case in question, there was no public question involved.

Under the Home Rule Act, claims equitably payable may be paid, which distinguishes the Ellis Case in the first place. Furthermore, in the Ellis Case, at page 623, the court says:

"It does not appear, in the case or proceeding now in question, * * * that more was involved than the individual right of defendant to the office."

It can be seen further in this Ellis Case that if a public question, as we shall later show is involved in the case at bar, had been involved, even then, without any statute, a different conclusion would have been reached by the court.

[3] Nor is the action of the common council void as an attempted abuse of the taxing power. If there is any specific statute authorizing the payment, or any inherent right in the court to direct it, or if there is a public question involved, it is not an attempted abuse of the taxing power. Where there is a specific statute such as we have in the Home Rule Act, it is not an abuse of the taxing power. Mollnow v. Mayor, 89 Misc. Rep. 495, 152 N. Y. Supp. 110. When there are involved and settled questions of public interest and importance, such as whether the office of auditor of a great city was the head of a department, or merely a subordinate position, and the force and scope of the veteran civil service laws, then again it is not an attempted abuse of the taxing power, even though there is no specific statute

authorizing the payment of such a claim. Board of Supervisors v. Ellis, 59 N. Y. 620.

Both Mr. Fleischmann and Mr. Kenefick, in moving affidavits on the present application, stated that they considered the questions involved upon the original mandamus proceeding as of urgent and public importance, by reason of the numerous claims and accounts against the city upon which the auditor has to pass at all times, and as to the importance of having such audits valid, and also because it was important that the provisions of the Civil Service Law giving permanence of official tenure to veterans should be authoritatively and judicially established for the future guidance of the city and its officials, and Mr. Gleason, who succeeded Capt. Christey in the office, in his affidavit presented to the court on his application for a mandamus to compel the delivery of his warrant, justified his employment of Mr. Kenefick, in addition to the corporation counsel, upon the ground, as stated by him, that he considered the matter and the questions involved of general and public importance.

Mr. Cochrane, the comptroller, in his answering affidavit in this proceeding, does not go so far as to say that even he did not consider the questions involved in the original mandamus proceedings as of public interest and importance, but limited his statement in this regard to his belief:

"That such case did not present questions of much public interest and importance."

Respondent's counsel states in his brief handed to this court that:

"The real question at issue was whether or not the auditor of the city of Buffalo, under its charter and ordinances, was an independent officer, or a mere subordinate of the comptroller."

The determination of this question was of vital importance to the public, because of the many and multitudinous acts of the auditor of the city of Buffalo and the importance thereof. It was vital to determine whether he could act as a head of a department, independent in his powers, or whether his acts and doings were subject to and under the dominion and control of the comptroller or the common council of the city of Buffalo, and whether he was subject to arbitrary removal under the Veteran Acts.

There is no distinction, logically, between the reimbursing of a successful or an unsuccessful litigant, in determining their rights to public office. The cases where such a distinction is laid down apparently arose where there was a specific statute limiting the reimbursing to such officials as were successful in their litigation. Such is the wording of the section of the New York Charter heretofore referred to, as well as chapter 700 of the Laws of 1899. If the statutes had not limited reimbursing to successful litigants, there is no reason, lawfully or logically, why one who in good faith had made a contest, though unsuccessful, could not be repaid. Of course, where he is acting under a statute, and relies on the statute, and does not come within its purview, he cannot recover.

In the case at bar, however, we have a statute which, as has been heretofore said, permits of the payment of a claim equitably payable

by the city, though not constituting an obligation originally legally binding on it. The only case which is squarely determined under the Home Rule Act is the one decided by Justice Pound, above referred to, which permitted the reimbursing to a police officer against whom a judgment had been obtained for assault, of his expenses incurred in defending himself though unsuccessfully. That Capt. Christey acted in entire good faith in instituting the mandamus proceeding for his retention in office appears conclusively from the fact that the twelve judges who passed upon the question in all the courts were equally divided on the merits of the controversy. The situation is not unlike that which frequently arises in state Legislatures and in Congress, where the legal expenses incurred by unsuccessful, as well as successful, contestants for a seat, are often directed paid, where the contest and defense are made in good faith.

[4] So it is elementary that the courts will not interfere with or overrule the action of the legislative bodies of municipalities, except in the clearest cases of abuse of power. The common council of the city of Buffalo, in directing the payment of the claim in question, determined that the questions involved in the original litigation over the auditorship were of public moment and importance, and this decision of the municipal legislature, approved by the chief executive of the city, was fairly within the power and discretion of these municipal authorities, especially under the Home Rule Act, and should not be disturbed by the courts.

The application for a mandamus should be granted, but, under the stipulation of the parties, without costs.