# THE

# MISCELLANEOUS REPORTS

OF THE

# STATE OF NEW YORK

COMMENCING MAY, 1920.

---

Matter of the Application of EDWARD D. EMERSON et al., Constituting the Board of Education of the City of Buffalo, Relator, *v.* GEORGE S. BUCK et al., Constituting the Council of the City of Buffalo, and Ross GRAVES, as Commissioner of Finance and Accounts of Said City, Respondents.

(Supreme Court, Erie Special Term, May, 1920.)

Mandamus — when peremptory writ of, granted — city of Buffalo — boards of education — Laws of 1917, chap. 786 — Laws of 1919, chap. 645.

The power and right given by the charter of 1914 to the council of the city of Buffalo to change and modify the annual estimates submitted by the board of education deemed necessary by it for the proper conduct of public education in the city were superseded and repealed by the statutes (Laws of 1917, chap. 786, and Laws of 1919, chap. 645) relating to and prescribing the powers of boards of education throughout the state.

The council of said city, therefore, is without power to reduce the appropriations asked for by the board of education in its estimate, so far as relates to the salaries of teachers and other employees of the school department, and the board will be granted a peremptory writ of mandamus to compel the council to provide funds for the compensation of employees in the department of education in accordance with the estimates submitted by it.

1

APPLICATION for a peremptory writ of mandamus.

Simon D. Fleischmann and Louis E. Desbecker, for relators.

Hamilton Ward and Jeremiah J. Hurley, opposed.

WHEELER, J.   This is an application by the board of education of the city of Buffalo for a peremptory writ of mandamus to compel the council of the city to provide funds for the compensation of employees in the department of education in accordance with the estimates submitted by the board of education, and deemed necessary by it for the proper conduct and administration of public education in the city of Buffalo.

There has arisen between the board of education and the council of the city a dispute as to the power of the council to modify and change the annual estimates submitted by the board of education upon which appropriations of money for school purposes are to be based.

The council of the city has assumed to exercise this power, and to reduce the appropriations asked for by the board of education.  This reduction, so far as it relates to salaries of teachers and other employees of the school department, the board of education contend the council of the city has no authority to make.  The solution of the question in dispute turns entirely upon the interpretation and effect of certain provisions of the city charter and of certain legislative enactments relating to and prescribing the powers of boards of education throughout the state.

The present charter of Buffalo was passed by the state legislature in 1914, and is chapter 217 of the Laws of that year.  Section 44 of that charter provided for the appointment by the council, upon the nomination by the mayor, of a board of education.

Section 46 gave the council also the power to fix, by ordinance, the salary or compensation to be paid officers and employees of the city. Section 292 provides that all expenses of the school department shall be included and paid out of the general fund.

Without question if these provisions of the charter have not been superseded by later legislation, the council would still have the power to fix the salaries and determine the sum or sums to be appropriated for compensation of all teachers and employees of the school department. However, in 1917 (Laws of 1917, chap. 786) the legislature passed an act which became part of the Education Law of the state, and is known as article 33-a of that law. This act provides: "A board of education is hereby established in each city of the state. The educational affairs in each city shall be under the general management and control of a board of education to consist of not less than three and not more than nine members, to be chosen as hereinafter provided, and to be known as members of the board of education."

Section 868 defines the powers and duties of such educational boards: "Powers and duties of board of education.— Subject to the provisions of this chapter, the board of education in a city shall have the power and it shall be its duty

"1. To perform any duty imposed upon boards of education or trustees of common schools under this chapter or other statutes, or the regulations of The University of the State of New York, or the commissioner of education so far as they may be applicable to the school or other educational affairs of a city, and not inconsistent with the provisions of this article.

"2. To create, abolish, maintain and consolidate such positions, divisions, boards or bureaus as, in its judgment may be necessary for the proper and effi-

cient administration of its work; to appoint a super-
intendent of schools, such associate, district and other
superintendents, examiners, directors, supervisors,
principals, teachers, lecturers, special instructors,
medical inspectors, nurses, auditors, attendance offi-
cers, secretaries, clerks, janitors and other employees
and other persons or experts in educational, social or
recreational work or in the business management or
direction of its affairs as said board shall determine
necessary for the efficient management of the school
and other educational, social, recreational and busi-
ness activities; and to determine their duties except
as otherwise provided herein.''

Section 872-6: " The salaries of all members
of the supervising and teaching force and of all
employees and for all positions authorized under sec-
tion eight hundred and sixty-eight of this act shall
continue to be on the same basis as such salaries and
positions are when this article goes into effect, and
such salaries shall continue to be regulated and
increased in the same manner, by the same provisions
of law and under the same conditions as such salaries
are regulated and increased under the laws governing
such salaries at the time this article goes into
effect    *    *    *.''

Section 877-1: " The board of education in each
city having a population of less than one million shall
prepare annually an itemized estimate for the current
or ensuing fiscal year of such sum of money as it may
deem necessary for the purposes stated in this sec-
tion.    *    *    *    Such itemized estimate in such cities
shall be filed at such times and in such manner as city
departments or officers are required to submit estimate
for such departments or officers.''

Section 877-6: " In a city which had, according to
the federal census of nineteen hundred and ten, a popu-

lation of four hundred thousand or more but less than one million such estimate shall be filed with the officer authorized to receive other department estimates and the same acted on by such officer and by the council of such city in the same manner and with the same effect as other department estimates * * *. After the adoption of such budget the council shall cause the amount thereof to be included in the tax and assessment roll of the city and the same shall be collected in the same manner and at the same time as other taxes of the city are collected, and placed to the credit of the board of education.''

Sections 290-W and 293 of the charter placing the school board under the control of the council of the city, were specifically repealed.

It should be noted that the act of 1917 worked a marked change in the educational policy of the state, by practically taking the control of educational affairs out of the hands of city councils and vesting the power in boards of education. While such boards under the statute of 1917 had full power of appointment and management, nevertheless the authority to fix and determine salaries and compensation of teachers and employees still remained in the city council.

In 1919, however, another step was taken, and the state legislature passed chapter 645 of the Laws of that year, still further enlarging the powers of the board of education. This is known as article 33-B of the Education Law and is entitled: '' Salaries of the members of the supervising and teaching staff in city schools.'' Section 882 reads: '' Powers of board of education as to salaries. The board of education of each city of the state shall adopt by-laws fixing the salaries of the superintendent of schools, associate, district or other superintendent, members of the board of examiners, if any, directors, inspectors, supervisors,

principals, teachers, lecturers, special instructors and of all other members of the supervising and the teaching staff. Such by-laws shall establish uniform schedules of salaries for all members of the supervising and teaching staff in each city. The salaries and salary increments so fixed for principals and teachers by the by-laws of the board of education of each city, on and after January first, nineteen hundred and twenty, shall not be less than those prescribed in the following section of this article.''

In section 884 a schedule of minimum salaries in cities of the first class having less than one million inhabitants is fixed.

Section 887: '' The board of education in each city of the state shall fix the salaries and annual salary increments of all members of the supervising and teaching staffs and of all principals, teachers, supervisors or other employees, whose salaries are not fixed by the provisions of this act. The board of education in each city may also, in its discretion, increase the minimum salaries and salary increments of any members of the supervising and teaching staffs or other employees, whose salaries are not fixed by the provisions of this act.''

Section 889: ''A copy of the schedules and schedule conditions approved by the board of education of each city together with a copy of such changes in the schedules and schedule conditions as are made in conformity with this article, certified by the secretary of the board, shall, within thirty days after the adoption thereof, be filed in the office of the state commissioner of education.''

Finally the act provides, section 4, that '' *all acts and parts of acts, general or special, inconsistent with the provisions of this act,* are hereby repealed.''

The act of 1917 and that of 1919 worked a revolu-

tion in the management of the educational system of the state and of cities. The state undertook to establish a uniform system of direction of educational matters throughout the state and to divorce such management from the control of city councils, by placing the direction of educational matters in the hands of boards of education with the broadest powers. The principal changes are powers to appoint and employ the teaching force of the schools, and to fix salaries to be paid, subject to the provisions of the act as to minimum salaries.

It is urged that the charter provisions giving the city council the power and right to change and modify estimates submitted to them by the various departments, have not been repealed by the acts of 1917 and 1919.

However, section 3 of the act of 1917 provides that *" all acts or parts of acts, general or special, inconsistent with the provisions of this act are hereby repealed."* It was clearly the intention of the legislature to make the act of 1917 supersede all other laws inconsistent with the full and complete operation of the provisions of the act of 1917. We are unable to see how the charter provisions and the law of 1917 can be harmonized, and are of the opinion we must be guided alone by the acts of 1917 and 1919.

The relators in this proceding in pursuance of the authority and direction of sections 877–1, 877–6, having theretofore fixed and established the salaries of the teachers and other employees of the public schools of the city for the fiscal year to begin July 1, 1920, and having determined the amount of money necessary for such salaries, and the amount necessary to be raised by general tax, on or about February 2, 1920, reported the same in connection with the entire estimate for the conduct of said department to the defendant

Ross Graves as commissioner of finance and accounts of the city, and requested said commissioner to include said amounts in the estimates to be adopted by him and said council to meet the expenses and liabilities of the city government for the ensuing fiscal year.

The finance commissioner reduced the estimates furnished him by the board of education, and later the council in turn took final action on such estimates. By this action the estimate handed in by the board of education was reduced in the sum of $345,629. This reduction was of such a character that the board of education will be compelled to either materially reduce the number of teachers employed, or reduce the salaries to be paid below the minimum fixed by law. The latter alternative is impossible without violating the express provisions of the statute fixing minimum salaries for teachers.

The board of education concedes that the council may amend or reduce its estimates on many items, but contends that so far as teachers and employees are concerned, and the salaries to be paid them, the council must accept as final the estimates furnished by the board of education. In that contention we think the board of education is in the right.

Can the council by its action limit the number of the employees of the educational department below that thought necessary by the board? May the council substitute their judgment as to the number required in the place of the judgment of the board of education?

By section 685: "*The educational affairs in each city shall be under the general management and control of a board of education.*"

Section 868 confers on such board the very broadest powers. They may "create, abolish, maintain and consolidate, such positions, divisions, boards or bureaus as in its judgment may be necessary for the

proper and efficient administration of its work;" and to fill such positions may " appoint a superintendent of schools 　*　*　*　principals, teachers, lecturers, special instructors, 　*　*　* *as said board shall determine necessary for the efficient management of the school and other educational, social, recreational and business activities.*"

The board of education is made by the statute the sole judge of the positions to be filled and the number required. Such being the plain and explicit language of the statute, it is difficult to see how the council can even indirectly control or abridge those powers by making it impossible for the board of education to employ such an educational force as it thinks necessary for the proper administration of the department. But this is just what the action of the council in this case would accomplish by a reduction of the estimate for the pay of teachers and employees of the department. The act of 1919 fixes a minimum salary to be paid teachers. To comply with that statute the number employed and required must be reduced so as to keep within the appropriation actually made, and this is nothing more or less than an indirect veto of the power the legislature has conferred on boards of education.

Such surely was never the intention of the legislature. Not only does the act of 1917 give educational boards the power to create the necessary position and the power to appoint thereto, but the act of 1919 gives such boards the power and authority of " *fixing the salaries* " to be paid.

Certainly the council can no more reduce the salaries to be paid than it can reduce the force to be employed below what is thought necessary by the board of education. A veto power is nowhere reserved in the council, and is " inconsistent " with the powers and authority expressly conferred on boards of education.

When, therefore, a position is created, the salary fixed, and an appointment made, then clearly a liability is created on the part of the city to pay, and to provide by taxation for the payment of such salary. It is idle to argue that there is nothing in the charter requiring any appropriation whatever. Section 108 of the charter provides that " the council on or before a date prior to May 1st each year, and in the manner to be fixed by ordinance, shall adopt an estimate of the amount necessary to be raised by general tax to carry on the city government, and to meet the *expenses and liabilities* of the city for the next fiscal year. * * * The sum total of the adopted estimate shall be raised by general tax."

The extent of the city's expenses and liabilities so far as the educational department is concerned, is determined by the board of education, and to that extent by virtue of section 108 of the charter, the council must provide the necessary funds by suitable appropriation and tax. This duty we think the council has failed to perform.

In opposing the granting of the relief asked the defendants submit an affidavit to the effect that if the full estimate of expenses submitted by the board of education should be passed and allowed by the council the total amount to be raised by the general tax for the fiscal year beginning July 1, 1920, would exceed the two per cent of the assessed valuation of the real and personal property of the city of Buffalo, in violation of section 10 of article 8 of the State Constitution, which section limits the amount to be raised by taxation for any one year to two per cent of the assessed valuation of the property of the city. An examination of the figures submitted seems to justify the assertion that the amount of such excess would be $93,763.17.

Of course the city must observe the constitutional mandate. This can be accomplished by reducing the

appropriations made in the annual budget to other departments of the city. Nearly $23,000,000 in all is to be raised by general tax this year. Certainly the council and commissioner of finance ought to have had little difficulty in so pruning the estimates of the other departments of the city government as to meet the requirements of the department of education, and at the same time keep within the constitutional percentage permitted.

The query may well be made, why prune the estimates of the other departments for the benefit of the school department of the city. The court appreciates the difficulties under which the city council labors in meeting the needs and pressing demands of the various departments of the city government. Nevertheless in view of the plain reading of the statutes, we are of the opinion that if estimates and appropriations must be cut, the cutting must be at the expense of departments other than that of education. Public education has been often declared to be peculiarly a state function. *Matter of Hirshfield* v. *Cook,* 227 N. Y. 297. Certainly the later legislation indicates more and more a policy to take educational matters out of municipal control, and put them under the direction of boards exercising independent powers. The statutes passed by the legislature just adjourned further emphasize these views. Where local or purely municipal interests conflict with the state interests and policies, then the local must yield to the state. In other words, where expenditures must be curtailed either in local matters or in state matters, the curtailment must be in purely local matters.

We think we are safe in asserting that where it becomes a question whether the estimates for the school department shall be cut, or those of some purely local

Supreme Court, May, 1920.      [Vol. 112.

or municipal bureau, the cut must be made in the local rather than in the educational department. Especially in view of the powers and authority conferred by statute on the board of education of the city.

Accordingly the court reaches the conclusion that the city council was in error in revising the estimates of the board of education so far as the same related to salaries. That it was bound by statute and law to accept them and put them into the budget for the general tax of 1920. The power and the responsibility rests with the board of education.

We are unable to discover that the opposing affidavits raise any material questions of fact which prevent the issuing of a peremptory writ of mandamus. As stated early in this opinion, the only issues for determination are purely questions of law.

We, therefore, conclude the relators are entitled to a peremptory writ asked in accordance with the stipulation entered into by the parties to this proceeding at the time this proceeding was adjourned on the original return day of the order to show cause.

Ordered accordingly.