In the Matter of the Application of SIMON FLEISCHMANN and WILLIAM R. POOLEY for a Writ of Mandamus against ROSS GRAVES, as City Commissioner of Finance and Accounts of the City of Buffalo, Respondent.

Supreme Court, Erie Special Term, March, 1922.

Education Law — boards of education corporate bodies — power of board of education of city of Buffalo to employ counsel upon refusal of the corporation counsel to institute a mandamus proceeding to compel the city council to adopt the financial estimate submitted by the board and to employ counsel to represent it on a hostile investigation of its affairs — right of attorneys so retained to mandamus the city commissioner of finance to pay their bills which had been approved by board of education — sufficient funds in proper account — amount of bill cannot be questioned after audit by board — Education Law, §§ 300, 877.

By virtue of section 865 of the Education Law, which was added thereto by chapter 786 of the Laws of 1917, a board of education was established in each of the cities of the state, and each of said boards, by virtue of section 300 of the Education Law, became a body corporate and authorized to sue and be sued the same as a natural person.

The board of education of the city of Buffalo, as required by section 877 of the Education Law, prepared an itemized statement of the moneys required by the board for the fiscal year commencing July 1, 1920, an estimate of the revenues it was expected the board would receive from sources other than city taxes, and duly filed said estimates with the city commissioner of finance and accounts. In the estimates, as in former years and in assertion of its right so to do, the board included an item for the salary of an attorney to be appointed by it. The city council reduced the estimates by nearly $500,000, of which amount more than $300,000 was a reduction of the estimated amount for salaries and compensation of teachers and other employees, and after increasing by $5,000 the board's estimate of revenue, the council adopted the estimates as reduced and increased, and, as in former years, struck out the item for the salary of an attorney. Upon the refusal of the corporation counsel to institute a mandamus proceeding to compel the council to adopt the estimates as presented by the board, and being advised that if such a proceeding were instituted the corporation counsel would represent the council, the board employed one of the relators who instituted and conducted through all the courts a mandamus proceeding with respect to the appropria-

tion made by the council for the board for said fiscal year. The writ was sustained at Special Term and in the Appellate Division but the Court of Appeals, which had theretofore held (*Matter of Hirshfield* v. *Cook*, 227 N. Y. 297) that boards of education have not the exclusive authority to determine the amount to be expended in their department for purposes other than salaries of teachers and other employees, by a divided court, dismissed the writ by a decision to the effect that although the board had exclusive power to employ teachers and other necessary employees and to fix their compensation, yet with respect to the number of teachers and other employees required, the city council by virtue of its possessing all of the executive and administrative powers of the city and the exclusive power to levy taxes, by implication had concurrent power to the extent that by reducing the gross amount requested by the board, it might limit the authority of the board with respect to the number of teachers and other employees or the amount to be expended therefor and for other purposes. *Held*, that having in mind that by said statute of 1917 the legislature, pursuant to the mandate of section 1 of article IX of the Constitution of the state, had taken over from the municipalities, for direct administration by the state, the education of all children, and had conferred upon the boards of education exclusive authority with respect to everything incidental to said education, save only that left the municipal authorities, who were vested with a reasonable discretion with respect to approving the estimate of the funds required to be raised by local taxation for such purposes, an important question not free from reasonable doubt was presented by the mandamus proceeding.

The fact also that it was deemed necessary to employ special counsel to assist the law department in defending against the mandamus proceeding, and that his bill was audited and paid, made it clear that there was reasonable ground for the proceeding and that the board was warranted in retaining counsel, provided that it was authorized in any circumstances to employ attorneys and counsel.

Several months after the mandamus proceeding was instituted, the city council upon the asserted authority of the decision in *Matter of Hirshfield* v. *Cook*, 227 N. Y. 297, and upon the recommendation of the commissioner of finance and accounts and of the corporation counsel, adopted a resolution for a public investigation to be conducted by said commissioner, of the business management, direction and administration of the affairs of the board of education and of all matters incidental thereto and making an appropriation therefor. Upon being informed that the corporation counsel had been requested and directed to appear upon such investigation as counsel for the council and said commissioner, which he did, the board assuming, as it had the right to do, that the investigation would be conducted in a spirit antagonistic to it, retained both of the relators herein as counsel to represent it upon such investigation. *Held*, that in the circumstances, regardless of whether there was or was not an available appropriation for the employment of counsel for the fiscal year and without applying for an emergency appropriation as authorized by section 877(8) of the Education Law, the board necessarily had the incidental and implied power to employ counsel to present to the court for adjudication its contention that it was vested with exclusive authority to determine the extent to which the children of the city should be afforded opportunity for education, and that its determination, with respect to the number of teachers required, was neither subject to review by nor approval of the city council.

Upon the return of an order to show cause why a peremptory writ of mandamus should not issue commanding the city commissioner of finance and accounts to countersign an order drawn by the board of education on the city treasurer in favor of relators, as compensation for legal services in the mandamus proceeding and upon the said investigation, it was undisputed that the employment of relators was regularly made and that their bills for services were presented in due form and pursuant to duly adopted resolution. Upon granting the writ, *held*, that there being sufficient funds in the appropriation for the board not required for other specified purposes, the board was authorized to draw

the order in question and that it was not prohibited from so doing by section 877(10) of the Education Law.

The respondent could neither question the employment of relators nor the amount at which their bill had been duly audited by the board, and was, therefore, in duty bound to countersign it and upon its being so countersigned it will be the duty of the city treasurer to pay it.

Motion on the return of an order to show cause why a permanent writ of mandamus should not issue commanding the defendant, as city commissioner of finance and accounts of the city of Buffalo, to countersign an order drawn by the board of education of said city on the city treasurer in favor of the relators as compensation for legal services.

*Simon Fleischmann* (*Martin Clark,* of counsel; *Fleischmann & Pooley,* attorneys), for relators.

*Ralph K. Robertson, Assistant Corporation Counsel* (*William S. Rann, Corporation Counsel,* attorney), for defendant.

Laughlin, J.   The uncontroverted facts show that the relators are attorneys and counselors at law practicing their profession as copartners; that the board of education of the city of Buffalo, which for brevity will be designated the board, employed the relator Fleischmann to institute and conduct a mandamus proceeding, which will be presently described, and subsequently employed the relators to represent the board in a public investigation of the business management, direction and administration of the affairs of the board authorized by resolution of the city council, which for brevity will be referred to as the council, on the 19th of July, 1920, which designated the defendant to conduct said investigation and appropriated to his credit $5,000 therefor, to be expended on his vouchers.   Each employment was without any express agreement with respect to the compensation.   The attorneys rendered the services for which they were retained under the first employment and incurred incidental disbursements of the reasonable value and amount of $2,557.94, and under the second employment of $5,000; and an order was drawn by resolution of the board for the aggregate amount thereof in due form.   The countersignature of the order by the defendant, as city commissioner of finance and accounts, was a condition precedent to the right of the payees thereof to receive the money from the city treasurer.   The defendant refused to countersign the order and attempts to justify his refusal on the grounds that the board of education was not authorized to employ the relators and that no moneys had been appropriated by the city council from which said payment could lawfully be made.   By virtue of the provisions of section 865 of the Education Law (Laws of 1910, chap. 140), added to the Education Law by chapter 786

of the Laws of 1917, a board of education was established in each city of the state, and by virtue of section 300 of the Education Law each of said boards of education became a body corporate and authorized to sue and may be sued the same as a natural person.    State Const. art. VIII, § 3.

The first employment of the relator Fleischmann was with respect to a controversy which arose between the board and the council with respect to the appropriation made by the council for the board for the fiscal year commencing July 1, 1920; and the second employment, which was of both relators, was occasioned by a subsequent investigation of the board by the defendant by direction of the council.

On the 1st of February, 1920, the board, as required by section 877 of the Education Law, prepared an itemized estimate of the moneys required by the board for the ensuing fiscal year, aggregating $5,811,831, and an estimate of the revenues, aggregating $525,000, it was expected the board would receive from sources other than city taxes, and duly filed said estimates with defendant.    A controversy thereupon arose between the council and the board with respect to the authority of the former to revise by reducing the estimate as to the salaries for teachers and other employees. On the 21st of April, 1920, the council reduced the board's estimate by the sum of $498,230, and of that amount $343,928 was a reduction of the estimated amount for the salaries and compensation of teachers and other employees; and the council increased the board's estimate of revenues by $5,000; and it adopted the estimates as so reduced and increased, and in so doing included in the budget for the fiscal year under the heading " Resources to apply on Board of Education Appropriation," as items of estimated revenue the following: (1) From the state of New York and other sources, $500,000; (2) from the board of education revenue account, $25,000; and (3) from unexpended balance of appropriation for former year for purchase of typewriters, $5,000. The board thereupon determined that it was a matter of public concern that the power and authority of the council over the estimates made by the board should be judically decided, and that to that end a mandamus proceeding should be instituted to compel the council to adopt the estimates as presented by the board.    The board requested the corporation counsel to institute and conduct such a proceeding in its behalf, but he refused so to do and advised the board that if such a proceeding were instituted, it would be his duty to represent the council.    In said estimates as in its estimates for former years the board included an item for the salary of an attorney to be appointed by it, but the council

in so reducing the estimates struck this item out as it had done in former years. The board had always asserted its right to appoint an attorney, but since no appropriation was made therefor, it has in the interests of economy availed itself of the voluntary services of the corporation counsel who theretofore rendered to it legal services and advice when called upon so to do, excepting when a controversy arose between the council and the board, and in such cases the board employed other attorneys, but it does not appear how they were compensated. On the refusal of the corporation counsel to institute the mandamus proceeding and being advised that he would represent the council, the board employed the relator Fleischmann, who prepared the necessary papers and instituted the mandamus proceeding on the 29th of April, 1920, and conducted it through all of the courts. It was decided in favor of the relator at Special Term (*Matter of Emerson* v. *Buck,* 112 Misc. Rep. 1) and in the Appellate Division (194 App. Div. 81); but the Court of Appeals, by a divided court, reversed the order for the writ and dismissed the proceeding on the 1st day of March, 1921 (230 N. Y. 380). It appears that the appeal was decided before the opinion was formulated, and a memorandum prepared by Judge Andrews, who wrote the opinion, with respect to the effect of the decision, was publicly announced when the appeal was decided, as follows: " The decision of the court holds that the city council of Buffalo has the right to determine how much it shall spend for educational purposes. This includes salaries, maintenance and repairs. The court does not hold that the city has the right to reduce or raise the amount of any salary item submitted by the board of education, but holds that the council can fix the total education appropriation." The effect of the decision of the Court of Appeals, as I understand it, is that although the board has exclusive power to employ teachers and other necessary employees and to fix their compensation, yet with respect to the number of teachers and other employees required, the council, by virtue of its possessing all of the executive and administrative powers of the city and the exclusive power to levy taxes (City Charter of Buffalo, §§ 40, 102 (Laws of 1914, chap. 217); Education Law, § 877, subd. 6), by implication has concurrent power to the extent that by reducing the gross amount requested by the board, it may limit the authority of the board with respect to the number of teachers and other employees that may be so employed or the amount to be expended therefor and for other purposes. *People ex rel. Cropsey* v. *Hylan,* 199 App. Div. 218; affd. 232 N. Y. 601. It had been theretofore held in *Matter of Hirshfield* v. *Cook,* 227 N. Y. 297, that boards of education have not the exclusive authority to determine

the amount to be expended in their department for purposes other than salaries of teachers and other employees. It is to be borne in mind that pursuant to the mandate of section 1 of article IX of the state Constitution, the legislature, by the said act of 1917, had taken over from the municipalities for direct administration by the state, the education of all children and had conferred upon the boards of education exclusive authority with respect to everything incidental to such education save only that left the municipal authorities vested with a reasonable discretion with respect to approving the estimate of the funds required to be raised by local taxation for such purposes. *Matter of Emerson* v. *Buck, supra; Miller* v. *Tayntor,* 170 App. Div. 126. If the board had acquiesced in the reduction of its estimates without obtaining from the court a decision limiting and defining the authority of the council in that regard, the council on a future occasion by a greater reduction, might have more seriously impaired the franchises of the board. That an important question of law not free from reasonable doubt was presented by the mandamus proceeding is not only evidenced by the fact that the board's claim was sustained by the Special Term and Appellate Division and that the reversal by the Court of Appeals was by a divided court, but also by the fact that the corporation counsel and the council deemed it necessary to employ special counsel to assist the law department in defending against the proceeding and audited and paid his bill for $5,000 therefor, which was twice the amount charged by the relators for conducting the mandamus proceeding. It thus plainly appears that there was reasonable ground for the institution of the mandamus proceeding, and that the board was warranted in retaining the relators to conduct the same, provided it was authorized in any circumstances to employ attorneys and counsel.

As might reasonably be expected, it appears that the controversy between the council and the board with respect to the right of the council to reduce the estimate made by the board as to the salaries and compensation of employees became sharp and acute and was the subject of widespread discussion by the public and in the press; and on July 9, 1920, something over two months after the mandamus proceeding was instituted, the council on the recommendation of the defendant and of the corporation counsel adopted a resolution for a public investigation to be conducted by defendant of the business management, direction and administration of the affairs of the board and of all matters incidental thereto, and making an appropriation therefor, as herein before stated. The asserted authority of the council for such investigation was the decision in *Matter of Hirshfield* v. *Cook, supra,* in which

Supreme Court, March, 1922.          [Vol. 118

it was held, in effect, that it had concurrent authority with the board with respect to the appropriation necessary for the board for purposes other than salaries or compensation of employees; and it was announced by the council that the investigation would be public and that witnesses would be subpœnaed and examined. The board naturally inferred that the purpose of the investigation was an attack upon it with respect to the administration of the funds theretofore appropriated for it, and with respect to its estimate concerning its requirements for the fiscal year commencing July 1, 1920; and the board thereupon determined that it was advisable that it should be represented upon such investigation by counsel, inasmuch as it understood that the council was to be so represented. The board thereupon requested the corporation counsel to appear for and represent it on said investigation; but he informed it that he had been requested and directed to appear upon such investigation as counsel for the council and defendant, and felt obligated to comply with that request and intended to do so; and he proceeded to represent the council and the defendant upon that investigation by requesting the board on July 13, 1920, for a copy of its minutes from the time of its organization and by notifying it on September 22, 1920, that the defendant would begin to hold public hearings in the course of the investigation at a time and place therein specified. The board thereupon by resolution duly adopted retained the relators to represent it upon such investigation. The investigation was begun on the 27th of September, 1920, and about twenty hearings on different days were held over a period continuing until on or about the 20th of December, 1920. On said hearings the council appeared and was represented by the assistant corporation counsel, and the board was represented by the relator Fleischmann. Some twenty-five witnesses were examined and considerable documentary evidence was introduced; a stenographer was employed by defendant and a typewritten transcript of the testimony taken on the hearings embraces 2,199 pages. At the close of the hearing a brief was submitted in behalf of the board and the defendant transmitted it together with a brief in his behalf to the council, and the same were ordered printed as official records. It is quite evident that the board had a right to assume that said investigation was instituted and would be conducted in a spirit antagonistic to the board and with a view to convincing the public that the action of the council in thus reducing the estimates of the board was justified, and that the board was either extravagant or unreasonable with respect to the estimates submitted by it. The determination of the board in the circumstances that it was advisable and necessary that it be represented by counsel in

order that its action might be sustained and vindicated was, I think, reasonably warranted. See *Judson* v. *City of Niagara Falls,* 140 App. Div. 62; affd., 204 N. Y. 630. Doubtless owing to the fact that the board was thus represented by counsel on the investigation nothing detrimental to the board resulted from the investigation and it ended with the report made to the council by the defendant.

The refusal of the defendant to countersign the order left the relators in no position to make a demand on the city treasurer for the payment of the money, and consequently that official is not a party to the proceeding and his duty in the premises cannot be authoritatively adjudicated. Counsel for both parties, however, have fully argued the points with respect to the right of the relators to have this bill paid by the city, and the learned assistant corporation counsel realizing that it is in the interest of the city to have it adjudicated without further expense whether it is liable for the payment of this bill interposes no objection predicated upon a point of procedure and expressly waived any objection the effect of which, if sustained, might be to relegate the relators to an action against the city. The corporation counsel through the assistant corporation counsel expressed a wish that without regard to the form of the remedy or the present status of the appropriations the court should decide whether the claim of the relators was a valid enforcible claim against the city. The only point urged in behalf of the city with respect to the appropriation is in so far as it affected the power and authority of the board to employ the relators.

I am of opinion that the board by virtue of its being an independent corporate entity in these unforeseen and emergent circumstances, regardless of whether there was or was not an available appropriation, necessarily had the incidental and implied power to employ attorneys to present to the court for adjudication its contention that it was vested with exclusive authority to determine the extent to which the children of the city should be afforded an opportunity for education, and that its determination with respect to the number of teachers required was neither subject to review by nor the approval of the council. Section 11 of the General Corporation Law (being chapter 23 of the Consolidated Laws, chapter 28 of the Laws of 1909) provides among other things that " Every corporation as such has power, though not specified in the law under which it is incorporated: * * * 4. To appoint such officers and agents as its business shall require, and to fix their compensation." That section also provides that subdivisions 4 and 5 thereof shall not apply to municipal corporations, but a board of education is not a municipal corporation within the purview

of the General Corporation Law, for subdivision 1 of section 3 thereof defines a municipal corporation and limits the term to counties, towns, school districts, villages and cities " and any other territorial division of the state established by law with powers of local government." It will be observed that that definition confines municipal corporations to these specified and others possessing the powers of local government over a territorial division of the state. Plainly a board of education is not a county, town, village or city and it does not possess any powers of local government over a territorial division of the state, and is not a school district within the contemplation of the statute, which plainly has reference to school districts so named, the authorities of which have power to levy taxes. A board of education, therefore, while a corporation within the contemplation of the General Corporation Law, falls within the last subdivision of corporations made by section 2 thereof, which includes non-stock corporations other than religious and membership corporations.

Section 868, subdivision 2, of the Education Law provides, among other things, that a board of education shall have the power and it shall be its duty to appoint a superintendent of schools, associate superintendents, principals, teachers and other instructors, janitors, and " other employees and other persons or experts in educational, social or recreational work or in the business management or direction of its affairs as said board shall determine necessary for the efficient management of the schools and other educational, social, recreational and business activities; and to determine their duties except as otherwise provided herein." And subdivision 10 of said section confers upon such board the power and imposes upon it the duty to perform such other duties and to exercise such other powers " as may be required to administer the affairs placed under its control and management, to execute all powers vested in it, and to promote the best interests of the schools and other activities committed to its care." Since, therefore, the employment of attorneys and counsel was reasonably necessary and proper, the board was, I think, expressly authorized by said statutory provisions to employ the relators; but if it were not, I deem it perfectly plain that being a separate corporate entity it necessarily had implied power so to do as incidental to the performance of its functions. *Judson* v. *City of Niagara Falls, supra; People ex rel. Wells & Newton Co.* v. *Craig,* 232 N. Y. 125; *O'Brien* v. *City of Niagara Falls,* 65 Misc. Rep. 92; *Gould* v. *Board of Education,* 34 Hun, 16; *Bassett* v. *Fish,* 75 N. Y. 303; *Quintard* v. *City of New York,* 51 App. Div. 233; *Matter of Christey,* 92 Misc. Rep. 1; *Matter of Turrell,* 63 id. 502; *Matter of Peters* v. *Justice,* 75 id. 504;

*McCaffrey* v. *School District*, 74 Wis. 100; *State* v. *Aven*, 70 Ark. 291; *Page* v. *Township Board of Education*, 59 Mo. 264; *Hosner* v. *Village of Leonard*, 163 Mich. 92; *Smedley* v. *Kirby*, 120 id. 253; *Taylor* v. *Matthews*, 10 Ga. App. 852; 19 R. C. L. 774; *People ex rel. Kiehm* v. *Board of Education*, 198 App. Div. 476; *Freeman* v. *Brooks*, 29 Misc. Rep. 719. The learned assistant corporation counsel contends that the phraseology of the statute conferring authority on the board to employ is not sufficient to embrace the employment of attorneys and counsel; and he cites *Bristor* v. *Smith*, 158 N. Y. 157, where like phraseology but in a materially different statute was held not to embrace the employment of an attorney. But in *Quintard* v. *City of New York, supra,* a case more in point, where the statutory authority to employ was no greater, at least, than here, it was held that the board of charities of the county of Kings was authorized to employ counsel.

Section 880 of the Education Law, so far as here material, provides that all public moneys apportioned to the city by the state, and all funds raised or collected by the authorities of a city " for school purposes or to be used by the board of education for any purpose authorized in this chapter " or any other funds belonging to the city and received from any source whatsoever for similar purposes, " shall be paid into the treasury of such city and shall be credited to the board of education," and shall be disbursed only by authority of the board of education upon written orders drawn on the city treasurer or other fiscal officer of the city, and such orders shall be signed by the superintendent of schools and the secretary of the board of education or such other officers as the board may authorize and shall specify the purpose for which they are drawn and the person or corporation to whom they are payable; and subdivision 3 of that section provides that it shall be unlawful for a city treasurer or other officer having the custody of city funds " to permit the use of such funds for any purpose other than that for which they are lawfully authorized and such funds shall not be paid out except on audit of the board of education and the countersignature of the comptroller, and in a city having no comptroller by an officer designated by the officer or body having the general control of the financial affairs of such city." That subdivision further provides as follows: " The board of education of such city shall make, in addition to such classification of its funds and accounts as it desires for its own use and information, such further classification of the funds under its management and control and of the disbursements thereof as the comptroller of the city, or the officer or body having the general control of the financial affairs of such city, shall require, and such board shall furnish such data in relation to such funds

and their disbursements as the comptroller or such other financial officer or body of the city shall require." The city of Buffalo has a city treasurer, and the order was drawn on him. It is conceded that the only authority of the defendant or duty devolving upon him in the premises is with respect to countersigning the warrant pursuant to the provisions of said subdivision 3 of section 880, although no other statute and no action of the council devolving the duty upon him is cited or presented. The defendant contends that since no appropriation was made for the board for the employment of attorneys or counsel for the fiscal year and it neither submitted a " special estimate " specifying " items for extraordinary expenses " as authorized by subdivision 8 of section 877 of the Education Law " to meet emergencies which may arise," the drawing of the warrant was unauthorized, and, therefore, he was not obliged to countersign it. These objections involve two points, one of which it was the duty and within the power of the defendant to consider, but with respect to the other I think he had no duty to perform and had no authority in the premises. Since the board only could draw on the funds appropriated and provided for it, and since it, as a separate corporate entity, had exclusive authority to employ those whose services were deemed necessary to enable it properly to perform its corporate functions and to audit the accounts therefor, I am of opinion that the countersigning of the order by the defendant was required merely to enable him to keep an account of the disbursements and as an additional precaution to insure compliance with the statutory requirements with respect to making contracts and the presentation and auditing of bills by the board and to insure the genuineness of such audit and of the order and the authorization thereof by the board. See *People* v. *Earle,* 16 Abb. Pr. (N. S.) 64; *Lanigan* v. *Mayor,* 70 N. Y. 454; *People ex rel. Outwater* v. *Green,* 56 id. 466; *People ex rel. Allison* v. *Bd. of Education,* 26 App. Div. 208; *People ex rel. Rodgers* v. *Coler,* 56 id. 98; affd., 166 N. Y. 1; *Matter of Freel,* 148 id. 165; *People* v. *Fitzgerald,* 54 How. Pr. 1; *People* v. *Edmonds,* 15 Barb. 529. It was not intended, 1 think, to clothe defendant with any of the authority devolved upon the board or any power of revision with respect to its action (see *People ex rel. Wells & Newton Co.* v. *Craig, supra*), but merely to require him to check up the action to see if it had been taken in conformity with the requirements of the law. But the responsibility for the employment and the audit and for drawing the order rested on the board and the duty of deciding whether an appropriation had been made from which it could lawfully be paid and whether sufficient funds remained in the appropriation unexpended to warrant the payment

and of accepting and paying the order devolved, not upon the defendant, but upon the city treasurer. *People ex rel. Sage* v. *Schuyler*, 79 N. Y. 189.

If the board was authorized to employ the relators, it is undisputed that the employment was regularly made and that the bill for the services was presented in due form and pursuant to resolutions of the board authorizing the employment. It also appears that on the 27th of June, 1921, the board by resolution duly audited the bill of the relators and directed that the superintendent of schools and secretary of the board draw and sign an order on the city treasurer against the " board of education revenue account " for payment thereof and that it be countersigned by defendant, and on that day caused an order so drawn, together with a voucher for the amount and a letter from the board, to be presented to the defendant, thereby notifying him of the action taken by the board and that it called upon him to countersign the order, and on his failure so to do this proceeding was instituted. If I am right in holding that the board without regard to whether an appropriation had been made for it for such services for the fiscal year and without applying for such an emergency appropriation had authority to employ relators, it is quite clear that the defendant could not question such employment or question the amount at which the bill for the services of the attorneys was audited by the board (*People ex rel. Wells & Newton Co.* v. *Craig, supra*), and since on the assumption that there was authority to employ the relators, all formalities required by law were duly observed, it was the duty of defendant to countersign the order, for, as already observed, the legislature devolved the responsibility upon the board and upon the city treasurer and not upon him with respect to there being an appropriation and a sufficient balance therein appropriate to the payment of the order.

At the time when the order was presented to the relator to countersign there was a balance of the appropriation made for the board for the fiscal year far in excess of the amount of said order, and it appears that upon the expiration of that fiscal year there remained of the estimate made for the board an unexpended balance of $52,461.80 which was carried over and credited to the revenues of the board for the ensuing fiscal year. And on July 5, 1921, when the relators themselves formally demanded by letter that the defendant countersign the order, there was to the credit of the revenue account of the board an amount far in excess of the amount of said order. It does not appear that the estimate of the board was so itemized or that as allowed by the council it was so itemized

15

that the expenditure thereof was intended to be limited to particular purposes which would exclude the payment therefrom of the reasonable compensation of attorneys whose employment by the board was reasonably necessary. Once the appropriation for a board of education is made, it has, I think, by reason of its separate corporate existence, deriving none of its authority from the council but all from the legislature, exclusive control over the disbursement thereof for purposes authorized by the statute even though it may not have foreseen the necessity therefor and specified in its estimate a particular item of expenditure. See Education Law, §§ 315, 877, subd. 6; *Matter of Taxpayers of Plattsburgh*, 157 N. Y. 78; *Gunnison* v. *Bd. of Education*, 176 id. 11; *People ex rel. Wells & Newton Co.* v. *Craig, supra.* After the appropriation was made, the board was still clothed with its statutory authority and charged with the performance of its statutory duties. They were not by the making of the appropriation suspended in so far as there was not an appropriation therefor. No statute has been cited and I have found none which confines the board to the amount appropriated for a particular purpose by the annual appropriation, and subdivision 10 of section 877 by using the word " available " for the purpose instead of " appropriated therefor " would seem to indicate that it is not so limited. Good faith on its part toward the council and the public is of course required; but here the board could not have foreseen that there would be a necessity for such a mandamus proceeding and the employment of attorneys therefor or that such an investigation would be instituted against it in which it would be advisable to employ counsel in order that none of its corporate rights should be invaded and that the investigation should be confined to matters strictly within the province of the council and that all material facts with respect to any matter investigated might be presented to the public to the end that the prestige of the board, representing the state concerning educational matters, might not be impaired. There was no occasion for an emergency appropriation since there was a sufficient unexpended balance of the fund not appropriated to any other specific purpose. Moreover, it was necessary to apply for the writ of mandamus before May first and there was no time to obtain an appropriation and no reason to believe that an application therefor would have been acted upon favorably. I am of opinion that, since there were sufficient funds in the appropriation for the board, not required for other specified purposes, the board was authorized to draw the order in question and that it was not prohibited by subdivision 10 of section 877 of the Education Law which forbids such board from incurring a liability or expenses chargeable against the funds

under its control " for any purpose in excess of the amount appropriated or available therefor or otherwise authorized by law." I am, therefore, of opinion that the order was properly drawn by the board and that it was the duty of the defendant to countersign it, and that on its being presented to the city treasurer after having been so countersigned, it will be the duty of the city treasurer to pay it, for his duties with respect to this fund are purely ministerial and may be enforced by mandamus. *Matter of Freel, supra; People ex rel. Rodgers* v. *Coler, supra; People ex rel. Allison* v. *Board of Education, supra; People ex rel. McIntyre* v. *Coler,* 35 Misc. Rep. 454. It follows that the motion for a peremptory writ of mandamus against the defendant should be granted; but in the circumstances the defendant's failure to countersign the order was not arbitrary but was owing to his conviction, for which there were reasonable grounds, that the employment of the relators was not authorized, inasmuch as an appropriation had not been made for legal services to the board, and, therefore, no costs should be imposed.

Motion granted.